The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. I would be pleased to hear an argument in our opening case. Mr. Williams. Thank you. Good morning, and may it please the Court, my name is John Williams and I represent the appellants in this case. The essential position of the FTC on this appeal. I'm pretty sure you're going to need to speak up or speak more into the microphone. Usually not a problem, but I'll do that. Thank you. Let me start again if I could. The essential position of the FTC in this case, in this appeal, is that the appellants are entitled to no relief because they are bad guys and can't be trusted. Because they were found to have engaged in consumer fraud and assessed a penalty of $120 million. A penalty that was based upon the assumption that the property that they sold down in Belize was worthless. $120 million of worthless property. That was the judgment of the Court below and I cannot dispute that finding because that judgment was affirmed by this Court. But what I can point out and what brings us here today is that the FTC and the receiver have since determined, since the last appeal when we were here, that the property was not worthless. Now we're here under an abuse of discretion standard. I think so. And the question is whether Judge Mecedi abused his discretion. Yes. In failing to lift the asset freeze. Why would he want to lift the asset freeze in light of the fact that the receivership was established for the benefit of the defrauded consumers and they haven't received, as far as I can tell, a penny of it. But what you want to do is to transfer management of the assets from a professional receiver and a professional of fraud. Why would Judge Mecedi wish to turn over the assets to someone whose history of defrauding the consumers would mean that they would not receive a penny? He was put in jail. He was criminally prosecuted for concealing his assets. Your Honor, may I respond? Yeah. We are asking for something else as well, which I would like to get to right now. We're asking for an accounting, which doesn't require Mr. Puckey to touch the assets. Does that answer Judge Wilkinson's question? The answer to the question as a legal matter, Your Honor, is that the judge did not make the requisite findings under Kemp. But I would like to get beyond that. And I would like to go to my principal point here today. Judge Mecedi has lived with this case a very long time. And if I might say, I think he's done a pretty good job with it, given all that's been thrown at him. But he made findings that Mr. Puckey had been involved in extensive fraud, that he had misstated the amount of debt of his project, that he had exaggerated the existence of the amenities in his project, that he falsified the timeline of development, and that he misrepresented the resale value of the lots. On top of that, he was conspired to hide his assets so that they would not be used to make the consumers whole. And he was incarcerated for that. And in light of that history, you want to displace a professional receiver who could have hired a professional auctioneer to give the consumers some redress for the way in which they have been defrauded. And you want to take it out of the hands of the receiver and the auctioneer and put it into Mr. Puckey's hands, which will mean they would probably never, the defrauded consumers would probably never receive a penny of it. Your Honor, may I respond, please? Yes, we have asked for that. I'm not sure what the response is in this. We have asked for that because he didn't make the right findings. You can send it back down to Judge Money. I get that. What I'm here to say is something different, please. The basis of the hundred... The judge made those findings that Judge Wilkinson just recited. Yes. You have to deal with that. No, I don't, Your Honor. Can I finish, please? So you accept those findings? Yes, I have to. This court has affirmed them. What I'm here to say is that since the affirmance, the receiver has now and the FTC have now acknowledged that it was not worthless property. They have now acknowledged and they have stated that the property had at least 65% of the value. That is my essential point. And let me just finish up on that point. Did they acknowledge that below before the district court, prior to the district court making the findings that were just recited by Judge Wilkinson? No, that was after, Your Honor. That was after. We were up and then we went back and we're into this redress plan now. Okay. And they have to determine how much to give to the consumers. We get that. We get that we're liable for $120,000. Have they received a penny yet from those assets? Yes, they have. The FTC says they have not. They've received $10 million in redress. $10 million of the $120,000? Yes, because the receiver... That's not even 10% is it? May I finish, Your Honor? Yes, of course it's not. You know what would maybe be more helpful to your argument is if you address the concerns of the court. I understand. We're trying to get at things that we're concerned about in the case. And we understand that you want to say what you want to say. We want to hear that too. I am conceding. You're a little, I feel like you're a little combative with the panel. I'm sorry, and I apologize for that. Thank you. What I'd like to say is this. And Judge Thacker is exactly right. The concerns of the court are that you're asking a fox to be put back in charge of the chicken coop. No, I'm not, Your Honor. I acknowledge that he will probably never be put back in charge. Did you ask for the, you asked in your brief that the receiver be relieved or that you're being audited? I understand, Your Honor. And that was a step to get where I am going. I understand you're not going to grant that. I'm asking for an accounting. I'm asking here simply to acknowledge that we have a situation where the $120 million, the assumption has been it was worthless property. It is not worthless property. It is 65%. We have an Alice in Wonderland looking behind the glasses now where the assumption was that the property was worthless. So you're saying that now that, now that you say the FTC has found that the property is not worthless, that it's some 65%, that the, there should be a reaccounting of what the fine was? No, no, no. I am stuck with $120 million. Okay. What is the accounting? Because the 65% valuation is an acknowledgment that there is plenty of value that the consumers received. And they got, there are a ton of unsold lots down there that also have significant value. And my simple point here today is that we have $120 million judgment that we would like to pay off. And the receiver can keep it. We don't need to touch it. The risk, all we are asking for is that that property at this point be valued. We have got a judgment out there. We'll pay it. Assets are, assets are meant to secure payment of the judgment. I agree. And there's a $120 million judgment. And the property is worth. Right, from the, from the Emeredit case, it's $120 million. And the whole idea of a receiver is to secure payment of an outstanding court judgment. That's what the receiver was set in place for. And how does it further? That purpose to secure the payment of the judgment by putting the person in charge who defrauded the consumers to begin with. And it's, it's, it's inconceivable that we would put Mr. Pukie back in charge of the assets when the judgment has not been paid. And when he has a history of concealing his own assets, of misrepresenting what the property he was offering involved, I mean, this would, and it would not only undercut the receiver, it would undercut this court's prior decision. It would undercut Judge Mecidi's efforts to bring this case to something approaching a conclusion, and it would undercut the ability of the consumers to receive a single cent from all, from these assets. We have an alternative request, Your Honor. The request is for an accounting. We believe, and we have put in affidavit support, that the value of this property is well above $120 million. As the FTC has said, and as we quote, this is nothing but a collections case at this point. And if it turns out that the value of the property exceeds $120 million, it is conceded that we will get that back, even if we're bad guys. Judge Mecidi made no finding along those lines. That we would get the money back? I can't imagine that he has any basis to disagree with that. If we have assets... That's your only request today is that you have an accounting. Yes. That's the receiver of those in accounting. Yes. And that, did you, and you didn't request that of Judge... Oh, no, that's not, that is not right, Your Honor. You did request that of Judge Mecidi. Absolutely. And he turned it down. He turned it down. So the only issue then today is whether Judge Mecidi abused his discretion in denying an accounting. Correct. And that's the only thing on appeal. That's right, because you have indicated how you would rule everything. There's one question here. Yeah. That's the result, the whole case comes down, all you have is one question. Today, I do. Was there an abuse of discretion in denying an accounting? Because of this, Your Honor, because we believe the accounting will show that there are assets well more than $120 million. Okay. Number one, and we're entitled to then receive that money, pay off the judgment, or he keeps the judgment and then we get the excess. The FTC says we didn't ask for it. That is flatly wrong. If you look at page 14 of our brief, we talk about how we ask for a calculation of the amount of everything seized, calculation of the amount the consumers have already received by virtue of not having to pay for their valuable lots, and a calculation of the amounts we owed. That's what we asked for. In terms of even setting aside the extensive history of fraud, isn't there every reason to believe that a receiver and a professional auctioneer and the receiver himself would do a better job managing these assets than Mr. Pukey would do? Just from a standpoint of administration, isn't it good to have a fund that has been set up to reimburse the consumers here? Isn't it best to have it under the most professional management possible? And when you compare Mr. Pukey's managerial ability and history in comparison to the receiver and what the receiver could bring to the management of the assets, it's no contest. I have conceded that point. I'm asking for an accounting. The other point... Your argument today is basically boils down to the last three paragraphs of your brief.  I understand. And I would like to say one other thing. Does the government concede that you, the government, the FTC, concede the point that you requested an accounting? No, they don't. Then that's on appeal. Yeah, that is. They don't even agree with what you asked for. You say that's the only question is whether you're entitled to an accounting or should have had an accounting. And the government says you didn't even ask for one. I understand. And I... So there's two questions. Did you ask for one or did you get it? And the other question is, they also say that they have provided the accounting. If you look at what they say they provided, which is a cash statement, Joint Appendix 521, all it is, is a cash statement. They have not done an accounting. My time's up. Thank you. Thank you. Mr. Rankin. May it please the court, Ben Akin for the Federal Trade Commission. Two years ago, this court labeled the sanctuary belief scam dishonest to the core and described Appellant's conduct as the sort of deception that lies at the heart of what the FTC is empowered to seek out and stop. I take it from the panel's questions that they have a firm grasp on the stakes at this point. Mr. Puckey seems to concede that return of the property would be inappropriate. So I'll just jump to the accounting. We have been hit by all these intermediate appeals and these interlocutory appeals in this case. And there comes a point, it seems to me, where we ought to let Judge Mecedi manage the case. He's done a pretty good job. He's indicated an understandable frustration with every move that he's made of an interim nature and an interlocutory nature has been appealed up here. And there comes a point in time, it seems to me, where you let a district judge who's had a long history of managing this case, let him continue to manage this case without us jumping in and interrupting what he's trying to do at every turn. And Judge Mecedi has had his eyes focused on the fraud and the redress of the consumers who were defrauded. That's his purpose. It's a salutary purpose. It's a correct purpose. And the question is whether he should be given by this court some backup to what he's trying to do. I certainly agree with all of that, Your Honor. We would welcome an end to the ceaseless appeals in this case. We would welcome an end to the case in general and to allow the receiver to finally sell the land, redress consumers. And what about the opposing counsel says that the FDC has conceded that the property is not worthless? Do you concede that? A few points in response to that, Judge Thacker. First, we never argue that the property was worthless. It's real property in Belize. It obviously has some value. We do not concede that it has 65 percent of the value. So when you say 65 percent of the value, you're talking about 120 million. I'm frankly not sure what 65 percent would even mean. I think opposing 65 percent of what? That's all I'm asking. So the receiver has determined, based on a number of factors, working with the FTC and the Bureau of Economics at the FTC, or excuse me, the Bureau of Competition, that consumers should pay 65 percent of the original purchase price. It is not the case that the land is actually worth 65 percent of what they bought. The receiver has to balance a number of factors to both collect money in order to redress some consumers, in order to allow some consumers to finish purchasing the lots if they want. And we ultimately settled on a 65 percent number. 65 percent of what? Of the original purchase price that consumers paid. What will ultimately determine the value of the land is when CBRE, who has been enlisted by the receiver to sell the land, when they do sell the land, that will determine how much the land is worth. I don't think there's any question. Isn't that what an appellant wants, an accounting? I take it at this point that that's all they're seeking is an accounting. For a few reasons, there's no reason for an accounting or any reason this court should order an accounting. First of all, is it your view that they did or did not request an accounting from the district court? Our view is they did not request an accounting from the district court. They put it in the proposed order that they submitted. That issue is not preserved. That's correct. That issue is not preserved. Now, is it your position that we don't have a jurisdiction? So our position is that you don't have jurisdiction because there's no standing in the first place? I know that you brought up standing. You briefed that. But is it your position that we don't have any jurisdiction because there was no preservation of any issue? I don't think it's a jurisdictional question, Your Honor, that the court can always excuse a forfeiture. But we do believe that they did forfeit. How do you appeal something that you never asked for? Well, you can always argue, I suppose, that there's clear error. There's some reason the court should excuse a forfeiture. But they did forfeit the issue because they didn't include it in the brief. But the only thing they can point to on appeal is that they included a sentence in the proposed order. Wasn't Judge King correct when he said that the real question before us was whether there was an abuse of discretion on the part of the district judge in refusing to lift the asset freeze? And a lot of this stuff, I think I'm hearing for the first time. But what I'm concerned about is that there is an outstanding judgment. There is an outstanding judgment. And it was $120 million and not a penny of that outstanding judgment, as I understand it, has been paid to the consumers. And the receiver was put in place to secure that judgment and to make sure that they got something back from the way in which they had been defrauded. And so I think, as I understand it, the question before us was whether there was an abuse of discretion in failing to lift the asset freeze with when the asset freeze was put in place to ensure the satisfaction of an outstanding judgment. All of that is correct. Judge Wilkinson, with one small caveat, opposing counsel referred to the $10 million that has been distributed to the consumers. That $10 million did not come from these appellants. It came from a settlement that the receiver was able to achieve with a third party, with a bank in Belize. It was actually they collected more than $10 million. Some of that money has been spent to maintain the property. And then another $10 million has been distributed to consumers. So at this point, the individual appellants who are on appeal here, you're correct. They have not submitted a penny to the receivership. And you can see that JA 393 and 398, there's a declaration from the receiver that says all the assets that they have, cash assets, non-cash assets, none of that has come from the individual appellants. So your Honor is correct. There's an asset freeze and receivership in place to secure that $120 million contempt judgment. Appellants have not paid any of it. It's certainly not an abuse of discretion for the district court to prefer that a receiver, rather than the appellants, sell that property. The question is, what actions have the greatest likelihood of making sure that a court judgment, $120 million, that at least some of it is returned to the people to whom the misrepresentations were made? And it really goes, I think, to the court's authority to try to secure payment of the contempt judgment. That is still outstanding. As far as I can see, none of it's been paid. You're correct, Your Honor. There is no abuse of discretion here for the district court to prefer that a receiver, rather than appellants, sell the property and achieve as much redress for consumers as possible. You're also correct that these appellants have not paid a single penny to the receiver. There are no further questions. I want to know, what do you want us to do? Do you want us to affirm Judge Bassetti? I thought you wanted us to dismiss. You said there's no jurisdiction. Well, you are correct, Your Honor. We don't think that appellants have standing in the first place to bring this appeal. But even if there is standing, that we want you to affirm the district court's order. I'm happy to address questions about standing. There's jurisdiction they want us to affirm, but I thought your first position was you didn't want us to agree we have jurisdiction. So absolutely, we don't think that there is jurisdiction here because appellants do lack standing. For whatever reason, appellants adopted the strategy that the individual appellants who do not own the property that they are seeking to have returned brought this appeal. All the corporate defendants who actually own the property decided not to join the appeal and instead brought a separate action in the court of federal claims. Appellants do not meaningfully dispute any of those facts here. They say that the reason they nonetheless have standing is because we argued below that they control the assets. It is true that they control the assets. That's why those assets were subject to the receivership and asset freeze. But control and standing are two different doctrines. Appellants do not dispute the cases we cited that a corporate officer does not have standing to raise arguments on behalf of the corporation. A shareholder, even a sole shareholder, does not have standing to assert the property rights of the corporation. And that is the standing that appellants claim to have here. They were ordered to turn over these assets because they are the corporate officers or the shareholders of the relevant corporations. But those corporations did not join this appeal. Wouldn't it be simpler to just say there was no abuse of discretion in declining to... This case is complicated enough as it is. And wouldn't it be a simpler, straightforward way to do it? Say there's no abuse of discretion in declining to lift the asset freeze. We certainly do not object to Your Honor holding that there was no abuse of discretion in affirming the district court's order below. If there are no further questions, we ask that the court affirm. Dismiss or affirm. Mr. Williams. Two points. Number one. This issue that we did not include the request for an accounting in the briefs and that we did not ask for it below is flat out wrong. I see it in the briefs. Where in the record did you ask for it below? Because there's not a JA site in the briefs that I can see. Yeah, I believe there is, Your Honor. JA 470 and JA 471. And if I am mistaken on that, I will send you a letter. 470 and 471. Right. And then secondly, this issue about the consumers have received no redress from us. Oh, that's the proposed order that opposing counsel mentioned. So that's the only place where you raised this accounting with the district court below was in a proposed order? Yes. And I believe we also had it in the brief, but I will check on it. It's in the brief. I mean, your alternate argument is in the brief. But you think that just putting it in a proposed order to the district court below is sufficient to preserve the issue for appeal? I do. All right. Secondly, let me come to this issue about how we have provided no assets that have gone to redress. That is correct. And that's really the reason I am here, because the property sits now with the receiver. The property we have put in an affidavit saying it's worth approximately $300 million. Title to all the land, all the all the unsold lots, et cetera, et cetera, the improvements, the hotel we built on it, everything. It has value. And all we are saying is we can pay off $120 million when the receiver does sell the property. It is not our fault that the receiver has not taken the action yet to go through an accounting. They say in their brief that they did an accounting. And I mentioned that before. You can look at that supposed accounting. It is a cash flow statement. It is not an appraisal or an accounting of the property. And your honors, all we are asking for is pretty simple. The receiver has already spent $21 million administering this estate. What we are asking for is that they do an appraisal. They do an accounting. They figure out how much the assets are worth. Then they do the redress. And if there is any money left, it should go to the appellants. Thank you very much. All right. Thank you. We will come down to council and proceed to our next case.
judges: J. Harvie Wilkinson III, Robert B. King, Stephanie D. Thacker